HANNAH KENNEDY, as Administratrix, etc., Respondent, *v.* THE MANHATTAN RAILWAY COMPANY, Appellant.

In an action to recover damages for alleged negligence causing the death of K., plaintiff's intestate, a car cleaner in defendant's employ, these facts appeared : K. was employed in a yard in which trains were switched off to be cleaned, and which was on the same elevation above the street below as defendant's road. The yard was a new uncompleted structure with seven tracks. The plan was to have the spaces between the tracks covered with plank properly laid down and fastened. The platform of the car was over a space where the planks had not been laid. The hole was uncovered, unguarded and unlighted. While engaged in

the performance of his work, K., in attempting to go from the car to a train on another track, in the night time, stepped backward from the step of the platform of the car, fell through the hole into the street below and was killed. Defendant had been using the yard in an incomplete state for three or four weeks, during which time its carpenters had been constantly employed in covering the spaces between the tracks, two gangs being engaged, working from opposite ends of the yard toward the center, and the place where K. fell was in the space left uncovered when the carpenters quit work on that night. K. had been working in the yard during the whole of this time and was familiar with the fact that the spaces between the tracks were not completely covered. *Held*, that plaintiff was not entitled to recover; that defendant had the right to use the structure and to ask its employees to work therein before it was completely planked over, and if with full knowledge of that fact an employee consented to do his work at that place he assumed the risk consequent thereon, and as the evidence clearly showed such knowledge on the part of K., that a submission of the question to the jury was error.

(Argued February 27, 1895; decided March 12, 1895.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 17, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages for the negligent killing of Michael Kennedy, plaintiff's intestate.

The facts, so far as material, are stated in the opinion.

*Joseph H. Adams* for appellant. The plaintiff's intestate knew that the yard in which he was injured was in an uncompleted condition, and the danger of falling through the structure was one of the risks of his employment assumed by him, and for which the defendant cannot be held liable. (*Arnold* v. *D. & H. C. Co.*, 125 N. Y. 15; *Gibson* v. *E. R. Co.*, 63 id. 452; *De Forest* v. *Jewett*, 88 id. 264; *Hickey* v. *Taaffe*, 105 id. 36; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 id. 274; *Shaw* v. *Sheldon*, 103 id. 667; *Williams* v. *D., L. & W. R. R. Co.*, 116 id. 628; *Hudson* v. *O. S. S. Co.*, 110 id. 625; *Hussey* v. *Coger*, 112 id. 614; *Curran* v. *W. C. M. Co.*, 36

id. 153; *Stewart* v. *N. Y., O. & W. R. R. Co.,* 126 id. 631; *White* v. *W. L. Co.,* 131 id. 631; *Sullivan* v. *I. M. Co.,* 113 Mass. 396; *Ragon* v. *T., etc., R. R. Co.,* 97 Mich. 265; *Leary* v. *B., etc., R. R. Co.,* 139 Mass. 580; *Buzzell* v. *L., etc., Co.,* 77 Am. Dec. 212; *Hayden* v. *S. M. Co.,* 29 Conn. 548; *Clark* v. *Holmes,* 7 H. & N. 937.) The plaintiff failed to establish her contention that the defendant was guilty of negligence in failing to provide her intestate with a reasonably safe place in which to perform his work. (*Burke* v. *Wither-bee,* 98 N. Y. 563; *Sweeney* v. *B. & J. E. Co.,* 101 id. 523; *Bajus* v. *S. B. & N. Y. R. R. Co.,* 103 id. 312; *Hickey* v. *Taaffe,* 105 id. 26; *Dobbins* v. *Brown,* 119 id. 188; *Berrigan* v. *N. Y., L. E. & W. R. R. Co.,* 131 id. 582; *Gibson* v. *E. R. R. Co.,* 63 id. 449; *Crispin* v. *Babbitt,* 81 id. 516; *Stringham* v. *Hilton,* 111 id. 188; *Naylor* v. *C. & N. W. R. Co.,* 53 Wis. 661; *Stephenson* v. *Duncan,* 73 id. 406; *Gilbert* v. *Guild,* 144 Mass. 601; *Sullivan* v. *I. M. Co.,* 113 Mass. 398.) The plaintiff failed to establish an indispensable element in her case, namely, that her intestate himself was free from negligence contributing to his injury. This fact precludes her recovery. (*Cordell* v. *N. Y. C. & H. R. R. R. Co.,* 75 N. Y. 330; *Solomon* v. *M. R. Co.,* 103 id. 437; *Dubois* v. *City of Kingston,* 102 id. 219; *Palmer* v. *P. Co.,* 111 id. 488; *Tollman* v. *S., etc., R. R. Co.,* 98 id. 199; *Reynolds* v. *N. Y. C., etc., R. R. Co.,* 58 id. 248; *Hale* v. *Smith,* 78 id. 483; *Arnold* v. *D. & H. C. Co.,* 16 N. Y. S. R. 310; *Eades* v. *Clark,* 23 J. & S. 132.) The law looks to the direct or proximate cause and not to the intervening or remote cause. The proximate cause of the injury was the negligence of her intestate, and hence plaintiff should have been nonsuited. (*Ins. Co.* v. *Tweed,* 7 Wall. 44; *Wilds* v. *H. R. R. R. Co.,* 24 N. Y. 438; *Dwight* v. *G. L. Ins. Co.,* 103 id. 359; *Ryan* v. *M. R. Co.,* 121 id. 133; *Searles* v. *M. R. Co.,* 101 id. 662; *Taylor* v. *City of Yonkers,* 105 id. 209; *Kaveny* v. *City of Troy,* 108 id. 577.) The learned trial judge erred in refusing to charge the jury the propositions, as requested by the defendant, in regard to the duty

which the defendant owed to the plaintiff to warn him of dangers. (*Taaffe* v. *Hickey*, 105 N. Y. 36; *Palmer* v. *P. Co.*, 111 id. 488; *Coleman* v. *People*, 58 id. 561, 562; *Vandervoort* v. *Gould*, 36 id. 639, at 644; *People* v. *Gonzales*, 38 id. 59; *Haring* v. *N. Y. & E. R. R. Co.*, 13 Barb. 15; *Suydam* v. *G. S. R. R. Co.*, 41 id. 380.)

*David Leventritt* for respondent. The defendant clearly failed in its duty to provide and maintain a reasonably safe structure on which deceased might prosecute his labors. Its negligence was gross, because it knew of the danger and failed to adopt the simplest expedient to remedy it. (*Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 372; *Stephens* v. *H. V. K. Co.*, 69 Hun, 375; 143 N. Y. 633; *Freeman* v. *P. M. Co.*, 15 N. Y. Supp. 657; *Hawley* v. *N. C. R. Co.*, 82 N. Y. 370; *Sodeman* v. *T. T. S. & I. Co.*, 53 N. Y. S. R. 678; *Racine* v. *N. Y. C. & H. R. R. R. Co.*, 53 id. 680; *McLean* v. *S. O. Co.*, 50 id. 626.) Assuming that the yard was an incomplete structure in premature use, the decedent assumed only those perils that were necessarily attendant upon such condition, and the defendant was not thereby relieved of all liability for its failure to make the structure as reasonably safe as its unfinished condition would permit of. (*Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Booth* v. *B. & A. R. R. Co.*, 73 id. 38.) The exceptions to the refusals to charge on the subject of warnings have no merit. (*Raymond* v. *Richmond*, 88 N. Y. 671; *Tucker* v. *Ely*, 37 Hun, 565; *Palmer* v. *Dearing*, 93 N. Y. 10; *Wallace* v. *C. V. R. R. Co.*, 138 id. 302.)

PECKHAM, J. The plaintiff's intestate, Michael Kennedy, was one of the cleaners of defendant's cars at the northern terminus of its road. On the 24th of January, 1887, he fell from defendant's yard, located between 144th and 145th streets and Seventh and Eighth avenues in the city of New York, and received injuries from which he died. The plaintiff claims that the accident was occasioned solely by the defendant's negligence in failing to provide and maintain for the

deceased when in its service a safe and suitable structure upon which to prosecute his work. The yard spoken of was on a level with the main road of the defendant and was elevated quite a number of feet above the grade of the street below. Trains were switched off from the main road to this yard to be cleaned, repaired and otherwise provided for. Kennedy's duties as a car cleaner required him to work upon this elevated yard as well as upon the main line, and he had been in the employment of the defendant for about two years. This yard embraced seven tracks, running parallel with each other from Seventh avenue and connected with the main road on Eighth avenue. Between these tracks and parallel with them provision was made for plank roads or walks which would furnish defendant's servants with means for walking about the structure, and upon which the men at work would pass from car to car in the prosecution of their labors. The plank had not all been laid at the time of the accident. Upon the day in question Kennedy went to work at about seven o'clock P. M. There were seven trains with five cars to each train stationed in the new yard when he arrived there, and it was his duty, in connection with fellow-laborers, to go upon the yard that night for the purpose of cleaning these cars. There were five car cleaners at work that night, three of whom, among them the deceased, were at work on a train on the third track. They finished cleaning the first train about nine o'clock, and were getting out of it in the course of proceeding to the next train when the accident occurred. Kennedy and his companion White stepped out on the platform of the car nearest to the train which they intended to go to, and which was close to them on the Seventh avenue side, and Kennedy going first on the platform of the car caught hold of the handle on the platform and put his foot on the step, with his back towards the outside, and when he stepped back he dropped down through an opening in the plank below. This hole was uncovered, unguarded and unlighted. It extended six or eight feet long and three or four feet wide, and commenced right outside of the platform of the car, so that where the platform of the car

ended the hole below it began, and it was impossible for any one stepping down from the car step to find a footing, except by stepping underneath the car platform. This new yard, so-called, was an uncompleted structure. The defendant had been using it for three or four weeks, and when they commenced to use it it was in a very incomplete state, so far as the covering between the tracks was concerned. During that period and down to the time of the happening of the accident the defendant had its carpenters constantly employed in bringing the yard towards a completed state in the way of covering over the spaces between the tracks with planks, properly laid down and fastened. The work had not been completed, but was in the course of completion when the defendant commenced to use the yard, and during the three or four weeks which had elapsed from the time when they commenced to use it this work had been going on, and the spaces between the tracks had not yet been entirely covered. Kennedy had been working at the place during the whole of this time, and was necessarily familiar with the fact that the yard was not yet properly or completely covered with all the planks which it was the obvious intention of the defendant to place there. This clearly and unquestionably appears from the evidence of plaintiff's own witnesses.

The hole through which Kennedy fell was not a hole in a completed structure, carelessly left uncovered. Two gangs of carpenters had commenced to plank at the different ends of the yard, and were gradually working towards each other, and the space in question was the distance between them at this place as they left off work that night. As the witness White says, there were in other portions of the yard holes, meaning simply the fact that the carpenters had not yet completed the work which they were employed to do, and, hence, various places were still left uncovered at the time of the happening of this accident. The witness Cochran said that he knew that this was a new yard, and that they had been building it for some time; he knew that it was not completed at that time. In explaining the question of the covering of the structure

one of the witnesses for the defendant said : " During all this time, from the time they began to work on the new structure there at the new yard to the time when Kennedy fell through, the carpenters had been at work covering the structure, advancing more day by day in covering it up entirely, working from both ends." And " Kennedy had been working there for some time previous to the accident ; he was watchman for the week previous to that." This was simply corroborative of the plaintiff's evidence.

There was some evidence of a warning having been given to car cleaners on several nights before this occurrence to be careful on account of the condition of the yard, but I do not think that it was proved to have been given deceased with sufficient clearness to admit of the statement that it was shown beyond dispute. Actual knowledge of the facts by deceased cannot be doubted. It appears from the evidence beyond any contradiction or dispute that the structure was new and uncompleted, and, in that respect, dangerous for those who did not exercise particular care in regard to walking about the yard. The learned judge who tried the case at Circuit apprehended with perfect clearness the law applicable to this case. He charged the jury that the defendant had the right to use this structure in the condition it was before the planking was completed, and that it had the right to say : " We propose to use these tracks now, although we have not completed them," and if an employee then goes upon the structure to work with his eyes open and in possession of all his faculties and understands the situation, the law says that he does it at his own risk and cannot recover. And upon the request of the defendant's counsel the court also stated that if the deceased knew that the yard was in an unfinished state and that it was uncovered in places, and that it was in the course of being covered, he assumed by continuing in the employment the risk of falling through these uncovered places. We think this a perfectly correct statement of the law applicable to a case of this kind. The defendant had the right to use that structure before it was completely planked

over.    It could ask its employees to continue their work of cleaning its cars at that yard before the planking was completed, and if with full knowledge of that fact the employees should consent to do the work at that place they would assume the risk consequent thereon.    But the learned judge left it to the jury to decide the question whether the deceased was notified of the condition of the yard or whether he had acquired knowledge thereof so that he perfectly understood its condition before going to work.    We have carefully read over all the testimony in the case, and we have come to the conclusion that the evidence showed beyond any doubt that the deceased was fully aware of the general condition of this yard at the time when he went on duty on the night in question.    He had been there daily for more than three weeks, and had been watchman at times, and at times a car cleaner. He was necessarily familiar with the locality, with the fact that the yard was not completed, with the fact that the carpenters were at work daily and with the fact that the planking did not entirely cover the yard.    Knowing these facts, he must be held to have assumed the risks which accompanied such situation, and that he did know these facts we think there is no possible room for doubt.    It was not a question to be submitted to the jury.    Under these circumstances, when he went out from the car and turned his face towards the inside of the car platform and stepped off from the car backwards without looking where he was to land, we can only see a most sad and unfortunate accident for which the defendant, within acknowledged principles of law, cannot be held liable.

We think the judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur, except ANDREWS, Ch. J., and O'BRIEN, J., dissenting.

Judgment reversed.