(9 App. Div. 443.)

## GARETY v. KING.

(Supreme Court, Appellate Division, First Department. · October 23, 1896.)

1. MASTER AND SERVANT—SAFE PLACE TO WORK—QUESTION FOR JURY.
   It is a question for the jury whether a roof from which men were required to shovel snow was a safe place for them to work, where there was a flat skylight, consisting of a frame and ordinary window glass, without any protection around it. Ingraham, J., dissenting.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   Contributory negligence is a question for the jury where an employé shoveling snow on a roof fell through an unprotected flat skylight consisting of a frame and ordinary window glass, erected while he was working about the building, and there was no one who saw him fall. Ingraham, J., dissenting.

3. SAME—INSTRUCTIONS.
   An instruction that, if plaintiff's intestate knew of the existence of the skylight through which he fell, but exercised care to avoid the accident, plaintiff might recover, is erroneous, since it is tantamount to saying that, if intestate was free from negligence, he did not assume the risk of working in a place known to him to be dangerous.

4. SAME—RISK INCIDENT TO WORK.
   An employé assumes the risk of falling through an unprotected flat skylight in a roof, erected while he was working on a building, when he undertakes to shovel snow from the roof. Per Ingraham, J.

Appeal from trial term, New York county.

Action by Mary Garety, as administratrix of Francis Garety, deceased, against David H. King, Jr., to recover damages for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Edward B. Thomas, for appellant.
Nelson Zabriskie, for respondent.

INGRAHAM, J. The action is brought to recover for the damage sustained by the death of the plaintiff's intestate. By the plaintiff's evidence it appeared that the deceased was killed on the 18th day of February, 1893, by falling from the temporary roof of the building which the defendant was erecting, through a skylight in the roof. The plaintiff produced no witness who saw the accident. It appeared that the defendant had erected a temporary roof over the building that he was constructing, made of rough

boards; and in the middle of that roof, for the purpose of lighting the interior of the building, was placed an ordinary window sash for a skylight. On the 17th and 18th of February, 1893, there had been a heavy fall of snow, and on the morning of the 18th, some time before 12 o'clock, the plaintiff's intestate, with other men, was sent upon the roof to shovel off the snow that had fallen there. The men continued at that work until dinner time. Just before dinner, one of the men in the defendant's employ hallooed to the men shoveling snow to look out, that there was a skylight there; the deceased was present with the witness when the warning was given, and the witness said that after that warning he saw the skylight, covered with snow. Another man, who was also working on the roof before dinner, testified that he heard no such warning, but he worked there but a short time, having been called to other work. After dinner, it seems that the plaintiff's intestate returned to the roof to work, with at least one other man, and deceased subsequently fell through this skylight, and was killed. It was disputed whether, at the time of the accident, the skylight had been uncovered; but the roof had been only partly uncovered, the men working towards the skylight, pushing the snow in front of them with pushers. No one that testified saw the plaintiff's intestate fall; and there is no evidence to show why it was that he walked into or fell through the snow on the skylight away from the place at which he was working. The plaintiff's intestate had been working about this place for about four months, and the interior of the building depended largely upon the skylight for light. I can see no principle upon which this defendant, upon this evidence, can be held liable for this accident. The plaintiff's intestate was sent up to this roof to shovel snow. He was directed to work upon this particular roof; and the condition of this roof, and the labor that he was required to do there, would seem to have been as well known to the plaintiff's intestate as to the defendant or to his agent. The ordinary risks incident to that work were taken by the deceased when he accepted the employment to do the work. Working upon a temporary roof, or a scaffold of any kind, is more or less dangerous; and the risks incident to the employment, or the position in which the work is to be done, are taken by the person doing the work; and, as long as the employer sees to it that no secret defects render the position or appliances used for the work more dangerous than ordinary observation would indicate, or notifies his employé of any peculiar dangers incident to the work, not visible or apparent to a person of ordinary intelligence, he has performed his duty; and, if an accident happens, or the employé is injured, the employer is not liable. The direction to shovel the snow off this roof was accepted by the deceased, and thereby he took the risk of the dangers incident to that work; and while engaged in doing the work, in some unexplained way he fell into this skylight. Just how or why he fell through the skylight is, therefore, not apparent, but it is quite evident that, if he had proceeded in the ordinary way in the execution of his work, simply shoveling or pushing the snow away in front of him, he

would have discovered the skylight before reaching it, and thus avoided it. He was sent to clean the roof from snow. The very nature of his employment was notice to the deceased that all defects in the roof were covered up, and that, to be safe, he must proceed by uncovering the roof before walking upon it. The roof itself was a temporary one, not permanent, where a person sent to work upon it could assume that it was of a character that all parts of it would be safe. The risks that a man assumes in working upon such a roof covered with snow, and the degree of care that he was bound to exercise to avoid injury, must be materially different from that in the case of a permanent structure which one would have no reason to assume was dangerous. In the case of Crown v. Orr, 140 N. Y. 452, 35 N. E. 648, the court say:

"The master does not insure the servant against all accidents and mishaps that may befall him in the business. The servant, when he enters into the relation, assumes not only all the risks incident to such employment, but all dangers which are obvious and apparent. The law imposes upon him the duty of self-protection, and always assumes that this instinct, so deeply rooted in human nature, will guard him against all risks and dangers incident to the employment, or arising in the course of the business of which he has knowledge or the means of knowledge. If he voluntarily enters into or continues in the service without objection or complaint, having knowledge or means of knowing the dangers involved, he is deemed to assume the risk, and to waive any claim for damages against the master in case of personal injury to him."

See, also, Kennedy v. Railroad Co., 145 N. Y. 294, 39 N. E. 956.

Applying this principle to this case, it seems to me quite clear that the risk of falling off or through this temporary roof was a risk "incident to the employment, or arising in the course of the business of which he (the deceased) has knowledge or the means of knowledge." A master is not liable because an injury occurs in consequence of the nature of the work, or the position in which an employé must place himself to do it. This roof was not built for the purpose of catching snow nor for the purpose of providing a promenade for the workmen employed on the building or others, but for the purpose of protecting the building. And this window sash was put in the roof to furnish light to the interior of the building during its construction. The roof had been upon the building for about a month, and the deceased had been employed there about four months. The condition of the roof was apparent. The dangers incident to the employment by working upon it were apparent. The fact that the snow covered all inequalities or openings in the roof was apparent. The temporary structure of the roof was apparent. And one accepting such an employment upon such a place to do such work necessarily assumed the risk of either falling from or through the roof while so engaged. I do not think that there was any evidence from which an inference could be drawn that the deceased was free from contributory negligence. As before stated, it is a little difficult to see how he managed to go upon this skylight and fall through. He was engaged in pushing or shoveling the snow. His ordinary position would be to stand in the place from which the snow had been cleared, and

throw or push the snow away from in front of him. No one saw him fall, and no explanation was given of his being upon the skylight. The implement with which he was working was found with the handle broken. But it did not appear whether it was broken before or after his fall, or in consequence of the fall. There is absolutely nothing to show that the deceased exercised any care in doing the work, or that his going upon the skylight and falling through was not the result of his own negligence or carelessness. I think, upon both grounds,—first, that there is no evidence to show that the defendant neglected any duty that he owed the deceased; and, second, that there is no evidence to show that the deceased was free from contributory negligence,—that the complaint should have been dismissed.

The judgment must, therefore, be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, J. I concur in the conclusion that this judgment must be reversed, but not for the reasons stated in the opinion of Mr. Justice INGRAHAM. There was sufficient to go to the jury on the subject of negligence of the defendant in failing to furnish a safe place for men to work who were sent up to remove snow from the temporary roof, and that was the specification of the negligence attributed to the defendant. The roof was put up over a hallway. It was erected in December, at a time of the year and in a season when heavy snowstorms were to be expected. It was very slight; made of boards covered with a coat of pitch. A flat skylight, consisting of a frame with thin plates of ordinary window glass, was inserted in the roof, to afford light to stone masons in the hall below. No guard rail or barrier was put around that skylight, and it was left entirely unprotected. Its upper surface was but a few inches above the level of the roof, and under a heavy fall of snow, lying evenly on the roof of the skylight, might (and did) become entirely concealed. As an independent issue in the case, these facts were sufficient to show negligence. The time of year, the necessity for removing snow when it accumulated on the frail structure, the absence of any protection, or of anything to give notice to those on the roof of the danger they would encounter there, were enough to show that the defendant had not discharged his duty in making reasonably safe a place at which it would become in all probability necessary for his employés to work. There was enough also in the circumstances shown to keep the case before the jury on the question of contributory negligence. No one saw the plaintiff's intestate fall through the skylight, but there was evidence to show that when he fell a witness (Kane) was working within a few feet of him, but with his face averted, and that Garety was shoveling snow. It was for the jury to say on all the proof whether the plaintiff's intestate was free from contributory negligence, and there is no error in the record calling for a reversal of the judgment on either the issue of negligence or of contributory negligence, and the damages are not excessive.

But there was a fatal error in the charge of the learned judge to the jury on another and vital question in the case. The defendant contended that the plaintiff's intestate assumed as incident to his employment the risk of falling through this skylight, or off the roof, when he went up to remove snow. The rule of law that a servant assumes the apparent and obvious risks of his employment, as well as those he may ascertain by ordinary observation, is too well settled and understood to require the citation of authorities to support it. It was a crucial question of fact whether, in this case, the existence of the skylight and the danger of going upon the roof was known to or might have been known to the plaintiff's intestate, and there was conflicting evidence upon that subject, on which the jury might have found either way. The point was raised very clearly and sharply by the defendant's counsel, and the learned judge in his main charge instructed the jury "that, if the deceased did know of the existence of that window, and nevertheless undertook to work there, he assumed the risk of the apparent danger," and "it is for you, therefore, to say whether the decedent did know of the existence of that peril." This instruction was correct. If Garety knew of the existence of the skylight, and of the peril referred to, he assumed the risk of going to work upon that roof. But, at a subsequent stage of the trial, the learned judge expressly retracted that proper instruction, and specifically charged the jury that it was an erroneous statement of the law, and that, even if the decedent did know of the existence of the skylight, but exercised due care to avoid accident, the plaintiff might recover. That instruction was tantamount to saying that, if the decedent was free from negligence, he did not assume the risk of working at a dangerous place, known to him to be dangerous; and put the subject definitely before the jury in such a way as to authorize them to ignore altogether (if they found on the other issues in favor of the plaintiff) the question of the assumption by the decedent of the risks attendant upon his working in a known place of danger. The learned judge virtually eliminated from the case the entire question of the assumption of the risk, and made that issue identical with the one relating to contributory negligence, and thus inadvertently the jury were misled on that subject; and that it must have been influential with them sufficiently appears in the record.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concur. WILLIAMS, J., concurs in result.