KATE DIXON, as Administratrix of the Estate of HENRY DIXON, Deceased, Respondent, *v.* THE NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Appellant.

**Negligence — action for death of railroad employee — assumption of risk.**

Plaintiff's intestate was the conductor of an engine and crew engaged in switching freight cars at a railroad terminal. The tracks crossed a street in which the defendant was constructing a subway beneath its railroad. During this work the tracks over the subway were left with open spaces between the ties and rails across which planks were placed for the use of the workmen and moved from time to time as the work required. Intestate had been working in the vicinity during all the time the construction was going on and had been over and around the subway often enough to be chargeable with knowledge of the general situation. On the morning of the accident, a freight train, subject to his orders, backed down to a car which stood projecting over the subway

and stopped, while intestate went to the end of the car to adjust a "knuckle" so a coupling could be made. Just as he had completed the adjustment and had signaled the train to back down, he slipped and fell through the tracks into the subway, sustaining the injuries from which he died. *Held*, that the plaintiff cannot recover. There is no evidence that the intestate was required to make a coupling at this place, and, if it was unsafe, he was the conductor and should have ordered the engine to move the car away from the subway and into a safe place. Even if it be assumed that the defendant caused a coupling to be made over the subway and the risks of doing it were unusual, the intestate voluntarily assumed such risks, since he was chargeable with knowledge of the situation and its dangers. It was daylight and the entire situation was open and visible and the risks incident thereto perfectly apparent, so that the danger of falling as the result of a misstep or of slipping upon the snowy or icy ties or planks, was within the range of his experience and observation. (*Fredenburg* v. *Northern C. R. Co.*, 114 N. Y. 582 ; *Wazenski* v. *N. Y. C. & H. R. R. R. Co.*, 180 N. Y. 466, distinguished.)

*Dixon* v. *N. Y., O. & W. Ry. Co.*, 132 App. Div. 944, reversed.

(Argued February 10, 1910; decided March 4, 1910.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 15, 1909, which affirmed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*P. W. Cullinan* for appellant. A nonsuit should have been granted because no negligence on defendant's part was established. (*Toppi* v. *McDonald*, 128 App. Div. 443 ; *Curney* v. *M. D. Co.*, 191 N. Y. 301 ; *McGinness* v. *T. A. R. R. Co.*, 104 App. Div. 342 ; *Dobbins* v. *Brown*, 119 N. Y. 188 ; *Kern* v. *B. I. Co.*, 40 App. Div. 547 ; 17 App. Div. 135.) Plaintiff should have been nonsuited because decedent knew the situation about the subway and assumed the risks of the dangers complained of. (*Kennedy* v. *M. Ry. Co.*, 145 N. Y. 288 ; *Shaw* v. *Sheldon*, 103 N. Y. 667 ; *Gibson* v. *E. R. Co.*, 63 N. Y. 449 ; *Crown* v. *Orr*, 140 N. Y. 450 ; *Sweeney* v. *B. & J. E. Co.*, 101 N. Y. 520 ; *Powers* v.

*N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 274; *Hickey* v. *Taafe*, 105 N. Y. 36; *Anthony* v. *Leeret*, 105 N. Y. 600; *Murray* v. *N. Y. C. & H. R. R. R. Co.*, 55 App. Div. 344; *Fitzgerald* v. *N. Y. C. R. R. Co.*, 59 Hun, 225.)

*Charles N. Bulger* and *F. T. Cahill* for respondent. The motion for nonsuit was properly denied by the court and the negligence of the defendant established. (*Fredenburg* v. *N. C. Ry. Co.*, 191 N. Y. 582.) The question of assumption of risk was one of fact for the jury. (*G. R. & I. Ry. Co.* v. *Martin*, 41 Mich. 667; *Dowd* v. *N. Y., O. & W. R. R. Co.*, 170 N. Y. 459; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Embler* v. *Town of Walkill*, 132 N. Y. 222; *Benzing* v. *Steinway*, 101 N. Y. 547.)

Hiscock, J. While respondent's intestate was in the employ of appellant, on December 25, 1906, as the conductor of a yard or switching crew and engaged in the line of his duties, he fell through some open tracks into an underlying subway and received injuries which resulted in his death. This action was brought under the common law and thus far has been successfully maintained on the theory that the appellant was guilty of negligence in not furnishing the intestate with a proper place in which to do his work. Whatever may be judged concerning the omissions of the appellant we are of the opinion that the intestate assumed all of the risks which resulted in his unfortunate accident and that, therefore, his administratrix cannot recover.

In the city of Oswego at and for some time prior to the date of the accident there were five parallel railroad tracks running through Schuyler street practically on an east and west line and crossing at right angles another street known as Seventh street. Of these tracks all except the middle one belonged to the appellant and of these four tracks all except one seem to have been used for yard or switching purposes. The southerly track on which the accident happened was known as the " exchange track," and was used by the appellant in com-

mon with one or more other railroad companies for the purpose of distributing cars which had been brought into Oswego and which were to pass from one road to another. For several weeks before the date of the accident the appellant had been engaged in constructing a subway between twenty-five and thirty feet in width on the line of Seventh street beneath these tracks, and during this work the latter had been left in the form of open-work construction with spaces between the ties and still larger ones between the tracks. The only exception to this was that the workmen engaged in constructing the subway laid planks across the subway on the ties of the tracks and on stringers placed between the tracks for the purpose of obtaining a passageway from one side of the subway to the other in the course of their work. This arrangement of ways continually changed to suit the convenience of the workmen, and at the time of the accident there appears to have been only a line of single planks extending across the subway north of the north rail of the exchange track.

The intestate had been at work for appellant during all of the time this construction was going on, and while his employment during a portion of this time did not lead him constantly into the neighborhood of the subway, still he was over and around the latter with sufficient frequency down to the time of the accident so that he must be charged with knowledge of the general situation at that point. On the morning of the accident he had gone, with the engine subject to his orders, to a point east of the subway, and between ten and eleven o'clock in the forenoon, which was bright and pleasant, he received orders to move some cars standing on the exchange track. The engine and one or more cars attached thereto moved westerly on the exchange track towards the subway, but when some distance therefrom came to a stop and remained stationary and subject to the orders of the intestate, while he proceeded westerly for the purpose of adjusting the "knuckle" of the easterly car so as to permit a coupling to be made. On the evidence most favorable to the respondent the easterly end of the car to be coupled projected some dis-

tance beyond the westerly edge of the subway. While intestate was engaged in or just as he had completed adjusting the knuckle in some manner he fell through the tracks and was injured. The witness whose evidence is quoted by respondent as giving the most reliable account of what happened testified: "Dixon was just about at the end of that car, just turning around when I saw him give me the back up signal. I think he had one foot on one side of the rail and one foot on the other side of the rail. * * * It would be the north rail of the south track. * * * When he gave that signal he was just backing away from the box car which came over on the subway. * * * When I see him give that back up signal I turned around to see if the fireman was looking and when I looked back I saw Dixon going down the hole. It looked as if he was going head first."

The space between the ends of the ties of the adjoining tracks was about four feet and there was a coating at the time as described by some witnesses of light snow and by others of ice, on the plank and ties. The learned counsel for the respondent argues that the intestate stepped on the plank lying north of the track where he was working and that this plank tipped up or slipped out from beneath his feet. We are unable to discover any evidence whatever to sustain this theory, and it seems to be a matter of the merest conjecture whether the intestate made a miscalculation and stepped off the ties or whether in some manner his foot slipped thereon and therefrom. After the accident he told one of the witnesses that he "slipped and fell."

If it should be held that the appellant furnished the open tracks above the subway as a place for coupling cars it undoubtedly could be charged with negligence in not furnishing a reasonably safe place. We have doubts, however, whether it is to be charged with the responsibility which would result from requiring its employees to couple cars at this point. It, of course, had a right to construct a subway under its tracks, and during this process of construction would not be required to maintain the same condition of tracks

which would be obligatory under other circumstances. The place where a coupling should be made, in view of the temporary conditions incident to the construction of the subway, was very much a matter of detail, and intestate was the conductor of the crew and superintendent of its operations. If this was an unsafe place to make a coupling, we see no reason why he should not have ordered the engine under his control to shove or pull the car which was to be coupled away from the subway and into a safe position for coupling. (*Hordern* v. *Salvation Army*, 124 App. Div. 674.)

But if it be held for the purpose of this appeal that the appellant was responsible for causing a coupling to be made over the subway, and that this work was attended with unusual risks owing to the circumstances detailed, we see no escape from the proposition that intestate voluntarily assumed these additional risks, and that his representative cannot recover because he was injured as the result of them. As has been stated, the intestate, prior to the accident, had been over and around this subway sufficiently so that he must be charged with having had knowledge of the general conditions which prevailed. But beyond this, as he walked down to adjust the coupling, the entire situation was perfectly open and visible and the risks incident thereto perfectly apparent. His vision was not interfered with by darkness or obscurity of any kind, and his attention was not distracted or his judgment impaired by the orders of some superior or by other surrounding circumstances. The danger which he incurred of a fall as the result of a misstep or of slipping upon the snowy or icy ties and plank was one entirely within the range of his experience, and the estimate of its extent and imminency was not the subject of any complicated or scientific calculation. The case clearly seems to come within the principles of *Kennedy* v. *Manhattan Ry. Co.* (145 N. Y. 288) and *Shaw* v. *Sheldon* (103 N. Y. 667), and very many other authorities which might be cited.

It is radically different from the cases of *Fredenburg* v. *Northern C. R. Co.* (114 N. Y. 582) and *Wazenski* v. *N. Y.*

*C. & H. R. R. R. Co.* (180 N. Y. 466), relied on by the respondent, because in each of these cases the jury might easily and properly have found that the risk which resulted in injury was not obvious and apparent and that the person injured had no knowledge of its existence.

The defense that the intestate assumed the risks which have been discussed was fully presented on the trial and it was not necessary, as seems to be suggested by the respondent, for appellant affirmatively to plead it. (*Jenks* v. *Thompson,* 179 N. Y. 20, 26.)

The judgment must be reversed and a new trial granted, with costs to abide event.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.