OLIVE MALTBIE, as Administratrix of WILLIAM MALTBIE, Deceased, Respondent, v. ALVIN J. BELDEN et al., Appellants.

|     |     |
| --- | --- |
| 167 | 307 |
| 173 | ³473 |

1. MASTER AND SERVANT — RISK OF EMPLOYMENT. A servant is bound to protect his master's property from destruction by fire or any other cause, but when to do so subjects him to great and unusual danger he alone must decide the risk to be assumed.

2. ASSUMPTION OF RISK NOT INCIDENT TO REGULAR WORK. Where an effort to protect his master's property from destruction by fire may be regarded as a new employment involving risks not incident to his regular work, which are as obvious to him as to any other person engaged in the undertaking, a servant engaging therein under direction of a foreman must be deemed to have assumed such risks, and if he is injured the master is not liable.

3. ASSUMPTION OF RISK INCIDENT TO REGULAR WORK — NEGLIGENCE OF CO-SERVANT. Where the effort to preserve the property may be regarded as a detail of the regular work, assuming that the injury resulted from the negligence of the foreman in failing to notify the servant of a peril which had developed during the progress of the conflagration, the master is not liable, since it is not his duty to notify the servant of a danger equally obvious to all, and the negligence is that of a co-servant for which the master is not responsible.

*Maltby* v. *Belden*, 45 App. Div. 384, reversed.

(Argued April 25, 1901; decided June 4, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 4, 1899, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Nottingham* for appellants. The plaintiff's intestate in voluntarily entering upon the hazardous work of putting out the fire, at the request of his foreman, Seely, assumed all the risks incidental thereto, of which the falling of burning trees and limbs was plainly one of the most direct and obvious. (*Crown* v. *Orr*, 140 N. Y. 450; *Reinig* v. *Broadway R. R. Co.*, 49 Hun, 269; *Gaertner* v. *S. & S.*, 21 App. Div. 403; *Arnold* v. *D. & H. C. Co.*, 125 N. Y. 15; *Dorney* v. *O'Neill*, 34 App. Div. 497; *Hutchinson* v. *Parker & Co.*, 39 App. Div. 133; *Kennedy* v. *M. Ry. Co.*, 145 N. Y. 288; *Leary* v. *B. & A. R. R. Co.*, 139 Mass. 580; *Wormell* v. *M. C. R. R. Co.*, 79 Me. 397, 410; *Wheeler* v. *Berry*, 95 Mich. 250.) The method of putting out the fire, thus preventing damage and protecting the master's property, and the manner of avoiding at the same time the perils incidental to such service, were details of the work that belonged to the duties of the servant, and not to those which the master owed to him. Anything done or omitted by the foreman, therefore, relating to the peril to which the servant was exposed in extinguishing the fire, was the act or omission of a fellow-servant, and not of the master. (*Loughlin* v. *State*, 105 N.Y. 159; *Cullen* v. *Norton*, 126 N. Y. 1; *Miller* v. *Thomas*, 15 App. Div. 105; *Ulrich* v. *N. Y. C. & H. R. R. R. Co.*, 25 App. Div. 465; *Hussey* v. *Coger*, 112 N. Y. 614; *Hutchinson* v. *Parker & Co.*, 39 App. Div. 133; *Perry* v. *Rogers*, 157 N. Y. 251; *Crispin* v. *Babbitt*, 81 N. Y. 516; *Mahoney* v. *Vacuum Oil Co.*, 76 Hun, 579; *McCosker* v. *L. I. R. R. Co.*, 84 N. Y. 77.) Notice to Hannan that the tree had burned to such an extent that it was likely to fall, was not notice to the

defendants. (*Reiser* v. *Railroad Co.*, 152 Penn. St. 38; *Richardson* v. *Cooper*, 88 Ill. 270; *Keenan* v. *N. Y., L. E. & W. R. R. Co.*, 145 N. Y. 190; *N. & C. R. R. Co.* v. *McDaniel*, 12 Lea [Tenn.], 386.)

*M. E. Driscoll* for respondent. The defendants were guilty of carelessness which caused the death of plaintiff's intestate. (*Benzing* v. *Steinway & Sons*, 101 N. Y. 547; *McDermott* v. *N. Y. C. & H. R. R. R. R. Co.*, 38 N. Y. S. R. 33; 131 N. Y. 668; *Mann* v. *O. P. Works*, 11 R. I. 152; *Nichols* v. *B. & D. Mfg. Co.*, 53 Hun, 137; 117 N. Y. 646; *Rettig* v. *F. A. T. Co.*, 6 Misc. Rep. 328; 144 N. Y. 715; *Kranz* v. *L. I. Ry. Co.*, 123 N. Y. 1; *McGonigle* v. *Canty*, 80 Hun, 301; *Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Leland* v. *Hearn*, 49 App. Div. 111; *Brennan* v. *Gordon*, 118 N. Y. 489.) Maltbie did not assume the risk of the tree falling on him. (*Mehan* v. *S., B. & N. Y. R. R. Corp.*, 73 N. Y. 385; *Kain* v. *Smith*, 89 N. Y. 375; *Gates* v. *State*, 128 N. Y. 221.)

BARTLETT, J. This action was brought by the plaintiff, as administratrix of the estate of her deceased husband, to recover of the defendants damages in negligently causing his death.

In October, 1897, the defendants, under contract with the state, were engaged in deepening the Erie canal in the town of Camillus, Onondaga county. The deceased was working with a gang of men employed by the defendants under the supervision of Orson Seeley as foreman. These workmen were engaged in driving spiles as part of the work they were prosecuting. The canal at this point ran east and west and was crossed at right angles by a highway, which, about one thousand feet south of the canal, was intersected by a state ditch, also being excavated by these contractors. The ditch ran from the highway diagonally to the canal, intersecting it some distance west of the highway bridge, thus making a triangle, bounded on the north by the canal, on the east by the

highway and on the south and west by the state ditch. The land in this triangle was low, swampy and apparently useless. The evidence shows that it was covered with grass, wood, stumps, trees and refuse. On this land, some forty or fifty yards south of the canal, stood a dead elm tree about thirty-five feet high, with some ragged stumps or ends of branches projecting from the upper part; the bark had fallen from it, it was weather beaten and decayed. A short distance west were a few other elm trees. Some little distance northwest of this dead elm and near the canal was a large quantity of spiles to be used in the work of the defendants.

During the morning of the day the plaintiff's intestate was killed a fire was discovered on the southwesterly or southerly portion of this triangle, which spread rapidly, and unless checked it was obvious that the spiles in question would be consumed. These defendants had two other gangs of workmen engaged in excavating on the state ditch under separate foremen; they also employed a walking boss named Hannan, who was supervising the work generally. The men in all of these gangs were called upon to fight the fire and did so for a considerable time. Hannan assumed the control of the men and directed their operations. Some of the men, among whom was the deceased, were engaged in carrying water in pails from the canal to the fire, and in doing so passed a short distance north of the dead elm tree. At the time of the accident this tree had been on fire for about three-quarters of an hour, and it was the subject of conversation between Hannan and a workman whether it should be cut down or allowed to burn, Hannan inclining to the latter view. The evidence does not disclose any general apprehension existing among the workmen that the burning tree was an object of special danger.

The deceased while engaged with some twenty-five others in carrying water from the canal to fire in the undergrowth passed, as he had repeatedly done, about twenty feet or more to the north of the burning tree, when it suddenly fell upon him, causing his instant death. The wind at the time was

blowing from the south.  The defendants were not present during the fire.

The jury rendered a verdict for the plaintiff and the Appellate Division affirmed the judgment entered thereon with a divided court.  The prevailing opinion rests upon the theory that the foremen and the walking boss, Hannan, were representing the masters in the prosecution of the regular work, and that when the property of the latter was endangered by fire it was their duty to request the assistance of the men under them to preserve it if possible; that if the men consented to leave the regular work and engage in protecting the property, the foremen still represented the masters in the emergency and owed to the men the same duty as would the masters if personally present.  It is conceded that the nature of the work was hazardous and that plaintiff's intestate assumed the obvious risks, but it is argued that he had the right to expect that he would be warned of any imminent danger which was known to the masters, but of which he had no knowledge.

The only alleged negligent act by which it is sought to charge the defendants is the failure of Hannan, the walking boss, to inform the men, including the deceased, who were carrying water in the vicinity of the burning tree, to keep away from it as it was about to fall.  This position assumes that Hannan represented the masters, and, furthermore, that he knew the tree was about to fall.

As to the time when the burning tree would fall it was matter of opinion and a subject upon which each person present could exercise his individual judgment.  The fact that the tree would fall, if the fire continued to consume it, was as much an obvious risk of the employment as any other danger which confronted the workmen in this unusual and exciting situation.

It may be said, in a general way, that it is the duty of the servant to protect his master's property from destruction by fire or any other cause, but when to do so subjects him to great and unusual danger, he alone must decide the risk to be

assumed. This would be so whether the peril to be encountered is regarded as a detail of the work or in the nature of a new employment. The intestate must have realized that the new employment (if it was such), upon which he entered, involved risks not incident to the regular work in which he had been engaged for months. The scene was one of great confusion and excitement, with clouds of smoke, sparks and cinders driven towards the men employed in fighting the fire by a wind from the south.

The plaintiff's intestate passed the burning tree a number of times in the course of his employment, and the danger of the situation was as obvious to him as to any other person engaged in the work of saving property, and if it failed to impress him, he was either negligent or dominated by that excitement and preoccupation usual at such a time.

A servant assumes not only the risks incident to his employment, but all dangers which are obvious and apparent, and so, if he voluntarily enters into, or continues in the service, having knowledge, or the means of knowing, the dangers involved, he is deemed to assume the risks and to waive any claim for damages against the master in case of personal injury. (*Crown* v. *Orr*, 140 N. Y. 450 ; Thompson on Negligence, p. 1008 ; *Haskin* v. *N. Y. C. & H. R. R. R. Co.;* 65 Barb. 129 ; affd., 56 N. Y. 608 ; *Jones* v. *Roach*, 9 J. & S. 248 ; *Wormell* v. *Maine Central R. R. Co.*, 79 Maine, 397 ; *Kennedy* v. *Manhattan Ry. Co.*, 145 N. Y. 288.)

The Supreme Judicial Court of Massachusetts held in *Leary* v. *Boston & Albany R. R. Co.* (139 Mass. 580) that if a servant of full age and ordinary intelligence, upon being required by his master to perform other duties more dangerous and complicated than those embraced in his original hiring, undertakes the same, knowing their dangerous character, and is injured by reason of his ignorance and inexperience, he cannot maintain an action against the master for such injury.

If the deceased entered upon a new employment when accepting the invitation of the foreman to assist in extinguishing the fire, the plaintiff is not entitled to recover for reasons

already stated. If, on the other hand, the effort to preserve the master's property be regarded as a detail of the regular work, the plaintiff's recovery cannot be sustained.

Assuming, for the argument's sake, that Hannan was negligent in not warning the deceased that the burning tree was dangerous and about to fall, the defendants are not liable; as it was no part of their duty to ·thus protect the deceased, by notice, of a peril that had developed during the progress of the conflagration and which was equally obvious to all. If there was any negligence on the part of Hannan it was the negligent act of a co-servant.

In *Loughlin* v. *State of New York* (105 N. Y. 159) Judge ANDREWS pointed out, with great clearness, the principles of law which determine the liability of the master for injuries caused by the negligence of a co-servant. The learned judge, in the course of his opinion, said : " But this liability, when it exists, does not rest upon the doctrine of *respondeat superior*, but solely upon the ground that in the particular case the co-servant, whose act or neglect caused the injury, was, by the appointment of the master, charged with the performance of duties which the master was bound to perform for the protection of his servants, a failure to perform which, or a negligent performance of which by a servant delegated to perform them, is regarded in law the master's failure or negligence, and not merely the failure or negligence of the co-servant. * * * In harmony with the general principle that the character of the act is the decisive test, it has been repeatedly decided in this court that the fact that the person whose negligence caused the injury was a servant of a higher grade than the servant injured, or that the latter was subject to the direction or control of the former, and was engaged at the time in executing the orders of the former, does not take the case out of the operation of the general rule, nor make the master liable. (*Hofnagle* v. *N. Y. C. & H. R. R. R. Co.*, 55 N. Y. 608 ; *McCosker* v. *Long Island R. R. Co.*, 84 N. Y. 77; ALLEN, J., in *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 562,

40

565; FOLGER, J., in *Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y. 528.)"

In the case at bar the several foremen and the men under them were engaged as co-servants in a laudable effort to protect the property of their employers, assuming, voluntarily, all the risks involved, and the masters rested under no duty of specially protecting the servants in the changing phases of this emergency.

This court has had occasion to deal with the general principle, which limits the liability of the master for injuries caused by a co-servant, in a large number of cases, a few of which we cite. (*Arnold* v. *D. & H. C. Co.*, 125 N. Y. 15; *Cullen* v. *Norton*, 126 N. Y. 1; *Keenan* v. *N. Y., L. E. & W. R. R. Co.*, 145 N. Y. 190; *Perry* v. *Rogers*, 157 N. Y. 251; *Capasso* v. *Woolfolk*, 163 N. Y. 472; *Di Vito* v. *Crage*, 165 N. Y. 378.)

The judgment and order appealed from should be reversed and a new trial ordered, with costs to abide the event.

PARKER, Ch. J., O'BRIEN, MARTIN, VANN, LANDON and CULLEN, JJ., concur.

Judgment and order reversed, etc.