(70 App. Div. 501.)

## DI PIETRO v. EMPIRE PORTLAND CEMENT CO.

(Supreme Court, Appellate Division, Fourth Department. March 11, 1902.)

ACCIDENT TO EMPLOYE—ASSUMPTION OF RISK.

An employé who leaves the work to which he was assigned, which was free from danger, and volunteers to assist another, going on a platform over machinery in operation, not intended for use at such times, and disregards the warning of others to get down, as it is a dangerous place, assumes the risk.

Appeal from trial term, Onondaga county.

Action by Antonio Di Pietro, administrator of Dominico Di Pietro, deceased, against the Empire Portland Cement Company. From judgment for plaintiff, and from order denying motion for new trial, on the ground that the verdict was contrary to the evidence and law, defendant appeals. Reversed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

James Devine, for appellant.
B. J. Shove, for respondent.

DAVY, J. Plaintiff's intestate, a married man, about 30 years of age, was killed at defendant's mill, in the village of Warners, Onondaga county, N. Y., about 3 o'clock in the afternoon of December 23, 1899, by falling upon unguarded cogwheels, into which he was drawn and killed. The question was whether the accident was the result of negligence on the part of the defendant. The jury found that it was, and the inquiry here is whether the proofs in the case sustain the finding. The plaintiff's contention is that the accident was the result of negligence on the part of the defendant in not erecting and maintaining a proper scaffolding for the deceased to work upon. The scaffolding, which was 13½ feet above the floor, consisted of two planks, the one 10, and the other 12, inches wide. The wider plank rested on top of the other. These planks extended along next to the machinery, and rested on cleats made of inch boards, about 12 inches wide, and were not nailed or fastened to the cleats. It was claimed by some of the plaintiff's witnesses that they were loose and wobbled. During the afternoon of December 23d a shaft broke in the mill, and the assistant superintendent, who had charge of the men and machinery, instructed Flynn and James Sandy, who were employés of the defendant, to run off the belts in what was called the "Ball Mills Room," and to hang them up. Sandy took a stick, and, while in the act of throwing them off, the deceased, who had been in the employ of the defendant for two years as a common laborer, and who was at that time operating the hopper in the kiln room on the floor above, came down and tendered his services; but Sandy informed him that he could throw them off alone, and requested him to get a piece of rope to tie them up. When the deceased returned with the rope, Sandy told him that he did not need it; that he had found some lacings, and would use them in tying up the belts. At this time the deceased went upon the plank or scaffolding next to belt No. 2, and was passing by the flywheel, when Sandy, who stood upon the ladder, called to him to get off the plank, that it was a dangerous place; but he shrugged his shoulders, and said, "I don't believe." He was also told by his companion, Antonio Di Pietro, not to go upon the scaffolding, as it was dangerous; but he remained there notwithstanding this warning. When the belts were adjusted, Sandy and Di Pietro started to go downstairs, and after they had gone a short distance Di Pietro looked back, and saw the deceased was between the cogwheels. It appears that this scaffolding was constructed at a time when some repairs were made to the machinery and a shaft was put in the mill, and it had remained there ever since. It was intended to be used only in repairing the machinery. The defendant had furnished three ladders for the employés to use in oiling the machinery and removing the belts from the pulleys and tying them up, so that there was no occasion for using the scaffolding for doing the work referred to. The case was tried upon the theory that, if the scaffolding had been properly built, this accident would not have happened. It must be remembered that the scaffolding was not constructed for the employés to stand upon in removing the belts from the pulleys, or to use for any purpose while the machinery was in motion. The accident occurred in the daytime, the room was also lighted by electricity, and, while there was some dust,

it was not enough to prevent the deceased from seeing the movements of the machinery. The shafting and cogwheels were so close to the platform upon which the deceased stood that he could plainly see it was a dangerous place. He had been assigned by the master to another department, where his duties were not in any sense dangerous, and had he remained there he would not have been killed. It was only when he volunteered to do work more hazardous, and not assigned him, that the accident occurred. When he went upon this platform the danger of the situation was as obvious to him as it was to the other employés, and after he was notified of the danger he was either negligent or indifferent as to the consequences.

In Shear. & R. Neg. § 207, the author says:

"The servant cannot recover for an injury which he would not have suffered if he had not voluntarily left his post of duty to take a position of greater danger, even though his act may be well meant and his object to continue to serve his master."

In McGovern v. Railroad Co., 123 N. Y. 287, 25 N. E. 374, the court says:

"If the servant puts himself in the way of dangerous machinery, with knowledge of its character, or places himself in the way of bodies moving in their accustomed orbit with irresistible force, and is thereby injured, it will be generally regarded as the result of his own carelessness."

In Maltbie v. Belden, 167 N. Y. 312, 60 N. E. 646, 54 L. R. A. 52, the court held that:

"A servant assumes, not only the risks incident to his employment, but all dangers which are obvious and apparent, and so if he voluntarily enters into or continues in the service, having knowledge or the means of knowing the dangers involved, he is deemed to assume the risks, and to waive any claim for damages against the master in case of personal injury."

Crown v. Orr, 140 N. Y. 452, 35 N. E. 648.

It is also claimed that the defendant was negligent in not placing guards around the machinery. The deceased knew from observation that there were no guards; he also knew the dangers to be apprehended from the movements of the machinery; and, having knowledge of these facts, he assumed the risks. Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367.

The immediate cause of the death of the intestate was his being crushed between the cogwheels. No one saw just how the accident occurred. Whether the platform wobbled, or he stubbed his toe, or slipped, or became dizzy and fell, or whether his clothes were caught in the machinery, no one knows. That is purely a matter of speculation. It is a well-settled rule of law that, in an action for damages based on negligence of the defendant, the absence of negligence contributing to the injury must be clearly shown by the plaintiff, either by direct proof or by circumstantial evidence. We are of the opinion that the application of well-settled principles of law to the facts and circumstances in this case requires a reversal of the judgment.

Judgment and order reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.