(72 App. Div. 47.)

### O'CONNALL v. THOMPSON–STARRETT CO.

(Supreme Court, Appellate Division, First Department. May 9, 1902.)

1. INJURY TO EMPLOYE—NEGLIGENCE OF MASTER—DETAILS OF WORK.

     As to details in the performance of work in which an employé is injured, though the particular manner in which it is done is by direction of the foreman, the master is not liable; he having furnished everything proper.

2. SAME—SAFE PLACE TO WORK—ASSUMPTION OF RISK.

     A master is not liable to an employé injured, on the ground of the place to work not being safe; it being as safe as is permissible for prosecution of the work; the risk being assumed.

3. SAME—PROXIMATE CAUSE.

     Any negligence in failing to furnish a sufficient number of men to do the work cannot render the master liable for injury to an employé, it not being shown this was the proximate cause of the accident.

4. APPEAL—RECORD.

     Plaintiff having recovered judgment on the ground of negligence, it devolves on him, on defendant's appeal, to have the record show negligence, if it did so appear on the trial.

Appeal from trial term, New York county.

Action by Bernard O'Connall, administrator of Edward O'Connall, deceased, against the Thompson-Starrett Company. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John Ford, for appellant.

John J. Delany, for respondent.

HATCH, J. This action is brought to recover damages for injuries received, resulting in the death of plaintiff's intestate, which it is claimed were produced by the negligence of the defendant. The plaintiff's intestate was employed by the defendant at the corner of Fifth Avenue and Fifty-Fifth street, where an excavation for a building was being made. While employed in lowering and putting in place certain timbers for the support of a bridge used by the public as a sidewalk over the excavation, he was thrown from a timber upon which he was standing, precipitated into the excavation, and, coming in contact with one of the supports therein, sustained the injuries resulting in his death. The complaint avers, as a basis upon which to found the negligence of the defendant, that the latter failed to discharge its duty to provide a safe place for the performance of the work which devolved upon the deceased; that such failure consisted in an omission to supply necessary materials, appliances, and devices, and also in omitting to furnish a sufficient number of servants, agents, and employés to perform the work which the deceased was required to do; and that by reason of these omissions upon the part of the defendants the accident occurred, and the injuries were sustained.

It is with the greatest difficulty, indeed, it is practically impossible, from the manner in which this record is made up, to determine

just what was the proximate cause of the accident. This condition is due to the fact that a cut of the excavation, supporting timbers, shoring braces, etc., appears in the case; and there was also used in connection with the testimony upon the trial a model of the tackle block and fall which was being used by the deceased at the time when the accident happened. Instead of being any aid to an understanding of the situation, and the method in which the fall and tackle block was used, it confuses the whole matter. The cut is not explained so as to be intelligible, and does not show the relation which the timbers and work bore to the accident. While the witnesses, in giving testimony, indicated, in explanation of the same, how the model worked, and the various positions which it and the timbers occupied in the conduct of the work, in the record the parties have contented themselves by inserting the words "indicating" and "illustrating," without giving any description of what was meant by the testimony of the witness when he indicated and illustrated, the result of which is to make the record practically unintelligible, so far as the particular things which caused the accident are concerned. After a careful study, however, of the record, we are enabled to gather that the evidence upon the part of the plaintiff tended to establish that one McDonald was the foreman of the defendant, had practical charge of the work and control of the men, and stood in respect to such relation as the alter ego of the master, in directing the performance of the work. It appeared that McDonald, for the purpose of supporting the bridge, directed the plaintiff's intestate and his brother to clean out the space underneath, rig up the tackle block and fall, and lower a timber into place, and while they were engaged in this work, and had the timber partially lowered, the deceased knocked off a cleat which furnished some support to some part of the timbers; that this occasioned a "kicking" of the timber which was being lowered, and such movement precipitated the deceased into the excavation. While it is extremely difficult to understand the claim of the plaintiff as to the particular duty which rested upon the master in this connection, and which it failed to perform, yet we gather from the whole case that in some manner the master was at fault in failing to provide a sufficient number of men to properly lower the timber into place. Upon this subject, the testimony seems to disclose that timbers for this purpose had been lowered many times before, and that prior to the time in question there had always been from three to four men assigned to perform this work, and that two were not enough to properly perform the work, with safety to those engaged. Upon this subject the testimony of the plaintiff is distinct, and to the effect that four men were required to make use of the appliances furnished in lowering the timber, while only two were designated upon the occasion when the accident happened.

It is a well-settled general proposition of law that a master is required, in the discharge of his duty, to furnish a reasonably safe place for the performance of the work required of the servant, to provide adequate and suitable tools and implements for his use, and, when they are needed, a sufficient number of competent workmen

to assist in the performance of the service required to be rendered. Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24; Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449. Some evidence was given tending to show that it was necessary, in the proper prosecution of the work, to erect an upright for the support of the beam when it was being lowered into position, and that this was not supplied, but that the foreman, McDonald, directed that the timber should be lashed in some form to other timbers, and that such lashing was intended to take the place of the upright which had been previously used. It appeared, and the jury would have been authorized to find, that the deceased had been properly and fully instructed as to the method and manner of performing this work, and of lowering the timber; that he knew how to do it, and had been intrusted with its performance, as a leader of the men engaged thereon. So far as the prosecution of this work in lowering the timber and the methods adopted were mere details in the performance of the work, there could be no fault upon the part of the master, even though the particular manner in which it was done was by the direction of the foreman; and no liability could be predicated thereon against the master for the method in which the work was performed, for under such circumstances the foreman would stand in relation thereto as a fellow servant. Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021. So far as the place itself is concerned, it is evident that no liability can be founded thereon against the defendant. The excavation, all of the timbers, and the support for the same were clearly visible, and of these surroundings the deceased was accurately and fully informed. Besides, the place was as safe as a place to work in respect to these conditions as was permissible for the prosecution of the work. The master, therefore, was relieved from liability in this respect, even though the place was inherently dangerous. The place itself was a risk which the servant assumed. O'Connell v. Clark, 22 App. Div. 466, 48 N. Y. Supp. 74. No complaint seems to have been made but that the tackle block and fall were properly constructed, and reasonably safe for the purpose required. So far, therefore, as the negligence of the defendants in this case is concerned, it must come to rest, if at all, solely upon the failure of the foreman to supply a sufficient number of men to properly perform the work. Upon this subject the evidence of the plaintiff is sufficient to authorize the jury in finding that four men were required to perform this work properly and safely, and that the direction which the foreman gave was to do it with two. Upon this point there is some conflict in the testimony. McDonald states that he directed the deceased to take his brother and get the rigging up, ready to lower the posts, and, if he needed any help after the rigging was ready, he would furnish it. He further states that the deceased had authority to call men employed about the work to assist him, without any direction or further request upon him, and that he also told him to lower the posts as he had previously done. Upon cross-examination, he testified that he would not be positive that he made use of the words constituting this direction, and finally that he did not think he gave such direction, and was in error concerning it. We think that within the

authorities above cited, as well as others, a duty was devolved upon the master to furnish a sufficient number of men to properly perform this work, and, if the two were not sufficient for that purpose, then that McDonald, as the representative of the master, was required to furnish more, and that negligence may be predicated of his failure so to do. If the deceased was vested with authority to call other men to his assistance, or if McDonald directed him, when he had the rigging in place, to apply to him for assistance, and the deceased failed to avail himself of the authority or the direction, but, in connection with his brother, assumed to do the work, then he clearly took the risk upon himself of performing it with what assistance he had, and would himself be guilty of negligence, in failing to secure the requisite assistance, if thereby he suffered injury. If the master furnished proper appliances, and men to operate them, and the injury was occasioned by the failure to make use of them, even though such failure was attributable to the act of the foreman, there can be no recovery. When the master has furnished appliances and men, and a competent foreman to direct and oversee the work, he has discharged his full duty, and the omission to make proper use of the same, resulting in injury, does not charge the master; and the foreman, under such circumstances, is to be regarded as a co-servant of the injured person. Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556.

Considering all of the testimony which we are able to understand, we conclude that a question may have been presented upon this subject which might be properly left for determination by the jury. Such question, however, is not available to the plaintiff in the present state of this record. It may have been that by the use of the diagram or cut, the model, and the explanation given of the same by the witnesses, sufficient appeared to show that the proximate cause of the accident was the failure to furnish a suitable number of men for performing the work. As the record appears upon this appeal, it is utterly impossible to reach a conclusion, or to satisfactorily determine that the failure in this respect was the proximate cause of the accident. What the position of the timber was at the time when the deceased knocked off the cleat, what relation it bore to the timber being lowered, how it kicked, or what occasioned it to kick, is beyond the power of man to decipher from this record; nor does it appear that the presence or absence of a proper number of men would have prevented what occurred when the cleat was knocked off. The knocking off of the cleat was clearly a detail of the work, and if that alone precipitated the plaintiff from the position he occupied, into the excavation, no liability would attach to the defendant for that result. It must in some form appear that the presence of these men would or might have held the timber in such a position that it would not kick when the cleat was removed. The case is barren of any evidence from which we can infer that such failure caused the timber to kick and precipitate the deceased into the excavation.

If the absence of the proper number of men was not the proximate cause of the accident, then it is of no consequence whether the master omitted his duty in this respect or not. The accident must flow from the omission of duty; otherwise there is no basis upon

which liability may be predicated. Upon the present record, such fact is not established, nor does sufficient evidence appear therein to authorize the jury so to find. Consequently there was nothing in the case which authorized a submission of the defendant's negligence upon this question to the jury.

It is evident from what has preceded that if the evidence, with the explanations of the model and the cut by the witnesses, would have been sufficient to authorize the submission of this question to the jury, it is also evident that the defendant was entitled to full and complete instructions concerning the rights and liabilities of the respective parties. In the most favorable view which can be taken of this case for the plaintiff, it is clear that the question as to whether the defendant omitted any duty which it was required to do is extremely close. An examination of the charge of the learned court does not aid us in determining what was the proximate cause of this accident. It is quite as silent respecting the particular thing which caused the deceased to fall into the excavation as is the evidence appearing in the record. The court charged generally concerning the duty and obligation of the master to the servant, and seems to have submitted, as one of the questions upon which the liability of the defendant might be founded, as to whether or not the deceased received sufficient instruction as to the method and manner of performing the work. Upon this subject, however, the proof was undisputed that the deceased had been employed in lowering all of the posts which had been lowered prior to the one in question, and that he had been fully instructed upon such subject, and was chosen for his superior knowledge in that connection, as a leader of men employed to do that work. There is not a particle of proof upon the part of the plaintiff tending to contradict this testimony. On the contrary, it appears that the deceased's brother, who was employed with him at the time of the accident, had full information with respect thereto; and he testified concerning the same upon the trial. We think it is a fair presumption that if the brother knew of the method of performing this work the deceased also knew it, and it does not seem that farther instruction would have added to his knowledge upon the subject.

The farther submission by the court seems to have been based upon the failure of the master in supplying proper material, appliances, and a sufficient number of servants to assist about the work. As we have already seen, the only basis upon which the negligence of the defendant could be predicated related to the last consideration. The jury in this case could not arrive at a correct disposition of the question involved unless there was laid before them the obligations and duties of the master upon the one part, and the risks assumed by the deceased upon the other. Upon this subject the defendant made several requests to charge, some of which the court charged, and some of which were refused. Those that were refused were seven in number, six of which, we think, stated a correct rule of law, were pertinent in their application to the case, and should have been charged, within the doctrine as announced in Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Perry v. Rogers,

supra; Laning v. Railroad Co., 49 N. Y. 521, 10 Am. Rep. 417; Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Wright v. Railroad Co., 25 N. Y. 562. It is not necessary to call attention in detail to these particular requests, as the rule which we have already laid down is sufficiently explicit for the direction of the court upon the new trial. If the negligence of the defendant was established, within the rule which we have laid down as governing this case, it has not been made to appear in the present record; nor has any evidence been adduced from which this court can see that the failure to furnish a sufficient number of men for the work was the proximate cause of the accident, or that it constituted an omission of duty upon the part of the defendant. If it did so appear upon the trial, it devolved upon the plaintiff to make it appear in the record submitted to this court; and, as it was not so made to appear, that, as well as the errors to which we have called attention, requires a reversal of this judgment.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur; INGRAHAM, J., in result.