466, p. 547, of the Laws of 1877, as such section was amended by chapter 134, p. 269, of the Laws of 1894, which amendment expressly declares:

"A final decree, directing the payment of money, may be enforced by serving a certified copy thereof personally upon the assignee for the benefit of creditors, and if said assignee willfully neglects to obey said decree, by punishing him for a contempt of court."

To be sure, the various powers under the general assignment act (Laws 1877, p. 543, c. 466), including those in section 22, are in terms conferred upon county courts; but early in the history of the act, to wit, in chapter 380, p. 626, of the laws of 1885, the Supreme Court was given full concurrent jurisdiction with the county courts. Moreover, by section 24 of the original act (Laws 1877, p. 547, c. 466), all the powers of a county judge under the act were, within the city and county of New York, conferred upon judges of the court of common pleas, and that court was given full jurisdiction in relation to assigned estates. Upon the consolidation of the courts by the new Constitution, the jurisdiction theretofore exercised by the court of common pleas was expressly vested in the Supreme Court. Const. art. 6, § 5. Upon all this I think it should be held that the Supreme Court, as well as the county courts, possesses the new power conferred by the amendment of 1894.

It is also claimed that the papers on which the commitment was made are defective, in failing to show that the title to the claim, which was originally vested in the Union Square Bank, ever passed to the Corn Exchange Bank, on whose behalf the order of commitment was obtained. It may be that there is some lack of definiteness in the original papers upon the point of such tranference of title, but this defect is cured by the affidavit on which the order to show cause to vacate was obtained, which affidavit states explicitly that the Union Square Bank assigned its interest in the sum in question to the Corn Exchange Bank. The motion should, therefore, be denied, but without costs.

Motion denied, without costs.

In re Mohawk Press, Inc. (Jary)
Motion to punish an assignee for the
efit of creditors for contempt of
t is granted (Matter of Merklen, 44
, 169; sec. 18, Debtor and Creditor
sec. 15, subdiv. 10, Debtor and
tor Law). Settle order.
Ponti v. 342 West 42d St
on is granted. Re

v. A. FRIEDERICK & SONS CO.

(Trial Term, Monroe County.   June, 1904.)

INDEPENDENT CONTRACTOR—NEGLIGENCE.

Where an independent contractor for the mason work in a building was not required by his contract to place guards around the elevator shafts, or to keep the floors of the building free from the brick and mortar naturally accumulating thereon, evidence that a workman of the contractor for the electrical lighting of the building, who, in order to reach his place of work, had to descend a ladder and travel through a pile of brick and mortar left by the defendant opposite an elevator shaft, was last seen at night at the top of the ladder, and was found dead at the bottom of the shaft, which had been left unguarded, does not render such defendant liable; the corridor being well lighted, and plaintiff's intestate being familiar with the surroundings.

Action by Peter Thaney against the A. Friederick & Sons Company. Order of nonsuit. On motion for new trial. Denied.

Louis E. Fuller, for plaintiff.
Edward Harris, Jr., for defendant.

DAVY, J. This action is brought to recover damages for the death of plaintiff's intestate, caused by the alleged negligence of the defendant. The accident occurred on the evening of November 6, 1902, in the Masonic Temple, located on Clinton Avenue North, in the City of Rochester, which was being built by contract and only partly completed. The defendant was doing the mason work on the building under a contract with the Masonic Temple Association. Rudolph Schmidt & Co. were the contractors for the electrical work, and the plaintiff's intestate, who was in the employ of Schmidt & Co., was assisting the electricians in installing the electric wires in the building at the time of the accident. The defendant and the electrical company were independent contractors. At the southwest corner of the fourth floor of the building was a work bench, which was used by the intestate and the other employés of Schmidt & Co. On this floor was a pile of broken brick and mortar. There were no guards around the elevator or stair wells. On the night of the accident the floor, elevator, and stair openings were all well lighted. The pile of brick and mortar in the corridor opposite the stair and elevator wells had been there ten days or two weeks, and during that time the intestate had traveled over them several times each day, and during the evening of the accident he had passed over the pile of brick six or eight times in going to and coming from the fifth floor to the work bench. The intestate and his co-workers were enabled to go up and down from the fourth to the fifth floor by an ordinary ladder, put there by the employés of Schmidt & Co. The last that was seen of the intestate before the accident was when he was at the top of the ladder on the fifth floor. He was found dead at the bottom of the elevator well soon thereafter. No one saw him fall, and whether he slipped and fell from the ladder, or slipped on the pile of brick and mortar on the fourth floor, no one knows. It is wholly a matter of surmise and speculation.

It clearly appears, from the testimony taken upon the trial, that the defendant, in constructing the building and permitting the brick and mortar to remain on the floor, and the elevator and stair openings to remain unguarded, did not violate his contract, or create a nuisance, or violate any rule of law. There was no duty imposed by law or by contract on the defendant to prevent the employés of Schmidt & Co. from climbing the ladder and walking over the floor upon which the brick were piled. The defendant was a mere contractor to do the mason work, and had no control over the intestate, and could not prevent the employés of Schmidt & Co. from coming into the building and going where they pleased. They came there by permission of the owners, and not by any invitation of the defendant. The defendant did not agree in its contract with the owners of the building to place guards around the elevator and stair openings, and to keep the floors clear of brick and mortar, and guard and protect the employés of Schmidt & Co. from accidents.

As between the Masonic Temple Association and the defendant, the obligation of the latter extended no further than to perform its

part of the contract for the construction of the building according to its terms with reasonable skill. It owed a duty to its employés to furnish them a reasonably safe place to work, but it owed no such duty to the employés of Schmidt & Co. If the plan and construction of the building were such as to make it necessary and proper to erect guards around the elevator and stair openings to protect other independent contractors doing work in the building, it was the duty of the Masonic Temple Association to have contracted with the defendant to take such precautionary measures. In that event the duty of erecting guards would have devolved upon the defendant, and it would have been liable for all accidents arising from any neglect on its part to comply with the requirements of the contract. Under such circumstances I am unable to see under what rule the defendant could be required to keep the place safe for the employés of Rudolph Schmidt & Co. to do their work. Under the contract the defendant was under no obligation to the employer to take measures to prevent persons from falling into openings in the building while in process of construction and necessary to be made in order to complete the building according to the terms of the contract. City of Buffalo v. Holloway, 7 N. Y. 493, 57 Am. Dec. 550; Storrs v. City of Utica, 17 N. Y. 109, 72 Am. Dec. 437.

In Mayor v. Cunliff, 2 N. Y. 172, Judge Cady, in speaking for the court, said:

"I have found no case in which a person had been held liable for negligence in the performance of any work, unless his negligence was in violation of a contract, express or implied, or of a duty which was imposed on him by law."

In Larmore v. Crown Point Iron Co., 101 N. Y. 394, 4 N. E. 754, 54 Am. Rep. 718, Judge Andrews said:

"There is no negligence, in a legal sense, which can give a right of action, unless there is a violation of a legal duty to exercise care. The duty may exist as to some persons, and not as to others, depending upon peculiar relations and circumstances."

Judge Parker, in discussing the question of negligence in Cosulich v. Standard O. Co., 122 N. Y. 126, 25 N. E. 260, 19 Am. St. Rep. 475, said:

"The court failed to recognize a distinction, which had been carefully guarded by the courts of this state, as well as by nearly all other jurisdictions in this country, between actions founded in negligence, where a contract relation existed between the parties, and those in which the defendant owed no other duty than to use such ordinary care and caution, as the nature of his business demanded, to avoid injury to others."

The defendant had no right to intentionally injure the intestate, and would be liable if it needlessly or carelessly injured him while performing its own work. It owed him a duty to abstain from creating a nuisance or a snare in the building that might injure him, but it did not owe him the duty of active vigilance to see that he was not injured while engaged in doing Schmidt & Co.'s work.

It has been held that there is no negligence, in a legal sense, which can give a right of action, unless there is a violation of a legal duty to exercise care. To establish a cause of action it must appear that the defendant owed some duty to the intestate which it has failed to discharge, and that the neglect was the cause of the injury. Splittorf

v. State of New York, 108 N. Y. 205, 15 N. E. 322. I am unable to discover upon the evidence that any duty rested on the defendant to keep the floor clear of brick or to erect guards around the elevator or stair openings. The deceased at the time of the accident was in every legal sense a stranger to the defendant. There is no evidence in the case that the accident was caused by any negligence on the part of the defendant. It was using brick and mortar in the construction of the building, and refuse would naturally accumulate on the floor. Hence, if the defendant can be held liable in this case, it must be upon the naked ground that it is responsible for the careless acts of the intestate, over whom it had no control. I know of no authority for imposing such a liability under such a state of facts.

It was held in Roulston v. Clark, 3 E. D. Smith, 366, that, where a party is engaged in erecting a building upon his own ground, he is not, nor are his neighbors, bound to put up temporary partitions about stairways, nor floors across beams, nor use other means for the protectioon of those who voluntarily enter the unfinished building and venture to walk across the beams or around its wellholes. In Castle v. Parker, 17 Law Rep. (N. S.) 367, the plaintiff, a custom house officer, had been in the habit of making use of a passage through the inside of a building in the course of erection, which was left open at both ends, to obtain access from the street in one side to certain bonded vaults on the other side, which it was his duy to superintend. The defendant was the subcontractor for the construction of the pavement and other stonework on the passages of the building. The plaintiff, in passing through the passage, fell down an opening and was injured. The regular mode of access to the vaults was not through the passage, but through a gateway from the street. Held, that no obligation lay upon the defendant to take precautions to guard the plaintiff from such an accident, and, the building being unfinished, if any license could be inferred to have been given to the plaintiff, it must be subject to the obvious risks incident to the condition of the building.

When injury occurs to a person from the act of one in doing his lawful business in a lawful way, the question arises at once whether he was under any legal obligation to look out for the protection of that particular person under those particular circumstances; for the law does not require vigilance in all cases or on behalf of all persons. In every case of negligence the plaintiff must point out the omission of duty, or the negligent act which caused the injury, and how it arose. In this case the plaintiff has failed to show that the defendant has violated any duty imposed upon it by law or by contract. The corridor and fourth floor were well lighted at the time of the accident, and the danger of the situation in performing the work was plain to be seen by the plaintiff's intestate and by other persons engaged in working on the building.

We will assume, for the purpose of the argument, that the relation of master and servant existed between the plaintiff's intestate and the defendant, and that the defendant was negligent in not removing the brick and placing guards around the openings. I do not see how the defendant, even then, could be held liable. The performance of the work on a building partly completed necessarily renders it hazardous

for the employés. The danger arises from the very nature of the work upon an unfinished building. The peril in going around the building during the process of construction was perfectly obvious to the intestate. Nothing was concealed. He was not led into any trap. Under the circumstances that existed in this case at the time of the accident, the plaintiff could not recover, even if the relation of master and servant had existed. The rule is well settled that a servant assumes, not only the risks incident to his employment, but all dangers which are obvious and apparent, and waives any claim for damages against the master in case of personal injury. Maltbie v. Belden, 167 N. Y. 307, 60 N. E. 645.

It is evident that the deceased assumed the risk of accidents while working in the building in its unfinished condition, and the plaintiff cannot recover. The nonsuit, therefore, was properly granted, and the motion for a new trial is denied.

Motion denied.