JAMES v. CRANFORD.

(Supreme Court, Appellate Division, Second Department. January 10, 1908.)

1. MASTER AND SERVANT—ASSUMPTION OF RISK.

The risks which a servant assumes are either such as are incident to his employment after the master has discharged his duty of reasonable care to prevent them, or such as are as open and obvious to the servant as to the master.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 538.]

2. SAME—OBVIOUS DANGERS.

A painter employed in painting an elevated railroad structure, and working with a swab made of iron, and who knew that it would be dangerous to touch with the swab a third rail charged with electricity, assumed the risk of an injury from an electric shock owing to his having brought the swab in contact with such rail.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 610–624.]

Hooker, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Hayes E. James against Charles Cranford. Appeal by defendant from a judgment in favor of plaintiff and from an order denying a new trial. Reversed and new trial granted.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and GAYNOR, JJ.

John C. Robinson, for appellant.
Herbert C. Smyth (James B. Mackie, on the brief), for respondent.

JENKS, J.   In this common-law action by servant against master for negligence, I think that the verdict for the plaintiff cannot stand in face of the testimony relating to the plea of assumption of risk. On September 28, 1905, the plaintiff, one of 40 or 50 painters, was painting the iron columns and iron girders of the structure of an elevated railroad.   The railroad at the time was being worked by power furnished by a third rail permanently placed along the rails.   While at work the plaintiff received an electric shock, and was injured.   The theory of the plaintiff is that the shock came from a short circuit induced by his own act.   The plaintiff, in common with his fellows, was furnished with a paint brush, a duster, and a swab.   A swab was made of thin iron, and was used to paint places which could not be painted by a brush.   A place under and near the third rail required the application of the swab.   The plaintiff knelt and thrust his swab through a narrow space, holding the swab so that about three inches projected above his hand.   He testifies that he had no difficulty in putting the swab in, and that no part of it came in contact then with the third rail; but, when he was pulling the swab out, he brought one end of it in contact witth the girder and the other end with the third rail simultaneously.   The plaintiff testified that the place was light, and that he had no difficulty in seeing everything.   There is no question but that the third rail was exposed to view, that plaintiff knew it as the third rail, and that it was in use.   It is shown by his testimony that the foreman always told them, "Now, be careful of the third rail; look out for the third rail."   He testified that he knew at the time there was danger in bringing his swab in connection with the girder and the third rail at the same time.   He then qualified his testimony, saying that he did not know when he began to work on this job in July that, if he brought his swab in contact with both the third rail and the girder at the same time, something such "as did happen would be very likely to happen"; that he first learned it after he received the shock; that he had received a shock several times before, but not from the use of an implement like the swab.   But he testified that he knew the third rail was "a very dangerous thing" to come in contact with at any time; that was the reason why he was always careful; that he knew the danger of it from the time that he began work.   He said he had received several slight shocks from scraping with a putty knife made of steel and wood.   He was asked whether he knew the thing was likely to occur at any time, and he replied that he did not know exactly how it would occur, but he knew that he was likely to get a shock at any time he came in contact with the third rail; that he always thought that, in order to avoid injury to himself, he must refrain from bringing the swab in contact with both surfaces.   "Q. And you knew it was dangerous, if you brought them together, didn't you?  A. Well, I— Q. Did you or not?  Witness:  I didn't positively know it then, but I always tried to be as careful as I could when I came to use the swab under the third rail."   He testified that he endeavored, when he was taking the swab out, to keep it from coming in contact

with the third rail, because he knew it would be dangerous to touch it intentionally; that he knew it at the time; that instinct had taught him that, and whatever taught him he knew it that day and before that day. He then testified that he did not know that there was any danger if he touched the third rail with a piece of iron of, its "melting off in his hand," but he knew that after he got the shock, and he continued that he knew the danger; that there was danger in the third rail and he always tried to avoid it. In Eastland v. Clarke, 165 N. Y. 427, 59 N. E. 202, 70 L. R. A. 751, the court say:

"It is now the settled law of this state that the risks which a servant assumes are either such as are incident to his employment after the master has discharged his duty of reasonable care to prevent them, or such as are quite as open and obvious to the servant as the master. Benzing v. Steinway & Sons, 101 N. Y. 552, 5 N. E. 449; Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573; Booth v. B. & A. R. R. Co., 73 N. Y. 40, 29 Am. Rep. 97; Pantzar v. Tilly Foster I. M. Co., 99 N. Y. 368, 2 N. E. 24."

In Maltbie v. Belden, 167 N. Y. 312, 60 N. E. 646, 54 L. R. A. 52, the court say:

"A servant assumes, not only the risks incident to his employment, but all dangers which are obvious and apparent, and so, if he voluntarily enters into, or continues in the service, having knowledge, or the means of knowing, the dangers involved, he is deemed to assume the risks and to waive any claim for damages against the master in case of personal injury. Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Thompson on Negligence, p. 1008; Haskins v. N. Y. C. & H. R. R. Co., 65 Barb. 129, affirmed in 56 N. Y. 608; Jones v. Roach, 9 Jones & S. 248; Wormell v. Maine Central R. R. Co., 79 Me. 397, 10 Atl. 49, 1 Am. St. Rep. 321; Kennedy v. Manhattan Ry. Co., 145 N. Y. 288, 39 N. E. 956."

The place of work could not be changed save by a change of construction of the elevated railroad itself. It is not suggested that the place itself should be protected temporarily so as to prevent the contact which caused the short circuit. The defendant fully understood the physical conditions thereon and the possible danger of doing the work in that place with the implement then used by him. The place itself was a risk assumed by the servant. O'Connall v. Thompson-Starrett Co., 72 App. Div. 47–51, 76 N. Y. Supp. 296, and authorities cited; Kaare v. T. S. & I. Co., 139 N. Y. 377, 34 N. E. 901; Davis v. Port Huron Engine & Thresher Co., 126 Mich. 429, 85 N. W. 1125; Carr v. Manchester Electric Co., 70 N. H. 308, 48 Atl. 286. The material used in the construction of the swab was thoroughly understood by the plaintiff. He testifies, in effect, that it was the only tool adapted for the purpose, and that he could not suggest anything that would have been better. It was quite evident that the implement must be thin and pliable. There is no suggestion that it could have been made of any nonconductive material. A professor of electrical engineering called as an expert, who testifies that he had never heard of a swab of this character before he was called into this case, testifies that he thought if it were covered with rubber, and so insulated, it would still be flexible enough to use. But, on the other hand, he did not think that any of the tools were ever insulated. There is no other suggestion, much less proof, that such tool could have been insulated and still be used for its purposes, or that there was a swab or a substi-

tute for a swab which ever had been insulated or which could be made of nonconductive material. The evidence is that swabs had been used upon this work constantly by other workmen. The plaintiff also testifies that he had used it on this work in thousands of like places along this line of work and without danger, and there is no proof of the use of any other appliance in such work, except of one likewise made of metal. In any event, as the evidence is clear that the plaintiff understood the peril if, in using this swab, he brought it in simultaneous contact with the third rail and the iron of the structure, I think he assumed the risk of using this swab in this place. The danger did not lie in the use of this implement in itself, but in bringing it in contact with the structure during its use. "The servant has equal duty and equal opportunity to observe the defects and dangers in simple tools or instruments, like hoes, ladders, wrenches, and the like, and takes the risk of the dangers in using them." Dresser's Employers' Liability, § 112, citing authorities: Marsh v. Chickering, 101 N. Y. 399, 5 N. E. 56; Powers v. N. Y., L. E. & W. R. R. Co., 98 N. Y. 274; Wright v. New York Central Railroad Company, 25 N. Y. 562, 566. Inasmuch, then, as the evidence is overwhelming that the plaintiff understood the danger of place and implement if in using it he made contact, it seems to me that the defendant was successful in establishing its plea of assumption of risk. The plaintiff's qualifications of his knowledge do not weaken the fact that at the time he undertook this work he understood that it was "dangerous" to make the contact with the swab—"very dangerous" to come in contact with the third rail. His assumption of risk did not turn upon the extent of his knowledge in July when he began the work, or of his ignorance of the precise or exact result of such contact or of the fact that the result is technically known as a short circuit. Probably to a man of his calling it would not have materially affected his work if he had known that such contact would produce a short circuit, instead of being very dangerous or dangerous. Surely he is not entitled to absolution because he did not precisely understand the scientific or physical fact resultant from contact or the electrical phenomenon resultant therefrom. Dresser on Employers' Liability lays down the principle:

"Therefore, where the plaintiff knows or is bound to know of danger arising from the condition of things, the fact that he does not know or appreciate the extent of the danger, or elements causing greater danger than he expects, is not material."

See, too, Davis v. Port Huron Engine & Thresher Co., 126 Mich. 432, 85 N. W. 1126; O'Maley v. South Boston Gaslight Co., 158 Mass. 135, 137, et seq., 32 N. E. 1119, 47 L. R. A. 161; Pratt v. Prouty, 153 Mass. 333–335, 26 N. E. 1002; Stuart v. West End Street Railway, 163 Mass. 391–393, 40 N. E. 180. The learned counsel for the respondent cites Hawley v. Northern Central Railway Co., 82 N. Y. 370, upon this point. This case is well discriminated from the case at bar by Cullen, J., in Spencer v. Worthington, 44 App. Div. 499, 60 N. Y. Supp. 875, where the learned justice said:

"In Hawley v. Northern Central Railway Co., 82 N. Y. 370, the plaintiff, an engineer, had a general knowledge that the railroad was out of repair, but he also knew that passengers and freight were continually being transported

over it, and he had no knowledge of the particular defect which caused his injury. In neither case can the danger which occasioned his injury be said to have been obvious."

Smith v. Manhattan R. Co., 112 App. Div. 202, 98 N. Y. Supp. 1, on which the respondent lays much stress, may be discriminated. It is true that the court in that case says that Smith was not familiar with short circuits, and he did not know what would produce a short circuit, or that one would be produced by an iron surface coming in contact with the third rail and a projecting bolt. But the court also says that Smith understood, and the undisputed evidence shows it to be a fact, that there was ordinarily no danger in touching the third rail. In the case at bar plaintiff knew that in the doing of this work it was very dangerous or dangerous to touch the girder and the third rail at the same time. Smith's case was also decided upon the ground that it was the duty of the defendant to furnish plaintiff with a broom or wooden shovel, especially in the absence of instructions as to the danger of causing a short circuit; i. e., a safe implement equally adapted for the work in hand.

The judgment must be reversed, and a new trial granted, costs to abide the event.

GAYNOR and RICH, JJ., concur. HOOKER, J., dissents. HIRSCHBERG, P. J., not voting.