## DAIR v. NEW YORK & P. R. S. S. CO.

(Supreme Court, Appellate Division, Second Department.   July 29, 1910.)

1. MASTER AND SERVANT (§§ 101, 102, 163*)—SAFE PLACE TO WORK—SUFFI-CIENT HELP TO DO WORK.

At common law it is the master's duty to furnish a servant with a reasonably safe place to work, and a sufficient number of employés to secure to him reasonable safety in the performance of his work, and the duty also extends to the placing of the employés, having reference to the duties to be performed by them at the different places where work is to be done, so as to insure to them reasonable safety in the performance thereof, the duty remaining upon the master while the work is being done, and such duty was not performed where eight men were required by general custom in the hold of a vessel to properly handle bundles of iron being loaded, and, owing to the construction of the vessel, the eight men worked in gangs of four independent of each other, so that neither could assist the other, four men being required to handle the cargo for which the custom allowed eight, and two men were withdrawn from one gang, and subsequently a draught of much greater weight than had been handled by the four men was lowered, as the result of which it fell while being handled, injuring one of them.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171–184, 192, 328–330; Dec. Dig. §§ 101, 102, 163.*]

2. MASTER AND SERVANT (§ 215*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

The injured servant had the right to assume that the lessening of their number would be taken into consideration by the foreman in making up the draughts of iron to be handled, and he was not bound to anticipate that so large a draught would be lowered.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 566; Dec. Dig. § 215.*]

Burr and Thomas, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by John Dair against the New York & Porto Rico Steamship Company.   Judgment of dismissal, and plaintiff appeals.   Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and BURR, THOMAS, RICH, and CARR, JJ.

Joseph H. Lecour, Jr., for appellant.

John C. Robinson, for respondent.

RICH, J.   The defendant was engaged in loading one of its vessels, at a pier in the East river, with corrugated iron put up in bundles weighing about 200 pounds each.   It required eighteen men to properly and safely perform the work of loading this vessel, eight of whom were placed in the hold to receive and store the cargo; two on deck, the gangway man, and the winch man; one, the hatch foreman, between the deck and the hold; and the other seven on the lighter, to get the cargo to the vessel.   It was necessary to divide the eight men placed in the hold into two gangs of four men each, each of which worked independently of the other, receiving alternately the cargo as it was lowered.   The plaintiff was one of the men working in the hold.   The iron being loaded was brought from the lighter on a truck,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

.wheeled by hand to an inclined plane extending from the dock to the deck of the vessel, beside the hatch, where it was bound together in suitable sized draughts, which were lowered by means of a fall and tackle into the hold, on each side of the shaft alternately. The iron was in pieces, 2 feet wide and 6 feet or more long, bound together in bundles weighing about 200 pounds. Six, seven, or eight of these bundles, weighing from 1,200 to 1,600 pounds, were bound together in a draught and lowered into the hold. While this was being done, the men in the hold were required to pull it to the point where they wished it to lie, where it was held in an upright position until the hook was released, when it was permitted to fall flat. By this procedure it was not necessary that the men in the hold should carry the iron or handle it in any manner after it was released. The proper number of men were furnished by the defendant. The hatch foreman was in charge of the gang and had authority over them. He directed where each man should work, what part of the work he should do, and placed them accordingly. He superintended them while working, and had the right to employ and discharge. While the work was in progress, the hatch foreman ordered four men out of the hold, two from each side of the shaft. This left two men, of whom plaintiff was one, on each side of the shaft to do the work. The hatch foreman left his position and thereafter wheeled the iron on the truck from the lighter to the hatchway of the vessel. The bundles that he brought at one load, irrespective of their number, were fastened in a draught and lowered to the hold. A number of such draughts had been lowered after changing the men, without accident, when the hatch foreman wheeled a load, consisting of a much larger number of bundles than he had theretofore placed in one load, which were made into a single draught and lowered. The evidence tends to show that these two men could not manage this load on account of its weight, and when the hook was released the iron fell upon them, seriously injuring the plaintiff.

Upon the trial, at the close of plaintiff's case, the defendant moved for the dismissal of the complaint. The learned trial justice reserved decision until the coming in of a verdict, and submitted the questions of fact to the jury, who found for the plaintiff, whereupon the court set the verdict aside and dismissed the complaint, with costs.

The action is based upon the common-law liability of a master, and it is argued that because eighteen men were generally regarded as sufficient for the work of loading a vessel, and, the defendant having furnished that number, neither the error nor negligence of the foreman in the distribution of the men, nor the manner of doing the work, created any liability to the plaintiff on the part of the defendant. This legal proposition is undoubtedly true if the acts of the hatch foreman did not involve, and did not occur in, the discharge of a duty owing by the defendant to the plaintiff. One of the duties devolving upon the defendant as master, under the common law, was to furnish the plaintiff with a reasonably safe place in which to work, with a sufficient number of employés to secure to him reasonable safety in the performance of the work he was required to do. O'Connall

v. Thompson-Starrett Co., 72 App. Div. 47, 76 N. Y. Supp. 296. It is not true that this duty was completely and finally discharged by the defendant when it furnished the number of men generally regarded sufficient to safely load a vessel. The duty of the master goes beyond the mere furnishing of the proper number of men. It is a continuing duty. It extends, in a case like the one at bar, to the placing of the men, having reference to the duties to be performed by them at the different places where work is to be done, in such numbers as to insure to them reasonable safety in the performance of the work, and this duty remains upon the master during the time the work is being carried on. Flike v. Boston & Albany R. R. Co., 53 N. Y. 549, 553, 13 Am. Rep. 545. It was established without contradiction that eight men were required in the hold of the vessel to properly handle the work. Owing to the construction of the vessel, the two gangs worked independent of each other, and neither could receive assistance from the other. Four men were therefore required to handle the cargo for which the rule and custom allowed eight. This rule was shown to be so general that it must be presumed to have been known to the defendant and its foreman.

I think that the proximate cause of the injury was the taking of two men out of plaintiff's shift, which was followed by the lowering of a draught of much greater weight than had been handled by the four men, as the result of which it fell. The jury have found upon sufficient evidence that the plaintiff's injury resulted from the negligence of the foreman in the discharge of a duty owing the plaintiff by the defendant. The defendant is liable for this negligence unless the plaintiff can be held as matter of law to have assumed the risks incident to the work he was doing. Under the facts in this case, this question was for the jury. I think that the plaintiff had the right to assume that the lessening of their number would be taken into consideration by the foreman in making up the draughts of iron to be handled, and he was not bound to anticipate that so large a draught would be sent down. This question was fairly submitted to the jury, who resolved it in favor of the plaintiff, and with their conclusion we should not interfere.

The judgment must be reversed, and a new trial granted; costs to abide the event.

HIRSCHBERG, P. J., and CARR, J., concur. BURR and THOMAS, JJ., dissent.